UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 07-03140-GLP
CHAPTER 13 CASE

IN RE:
SUZANNE RACHON

Debtor.
_____/

## MOTION FOR RELIEF FROM STAY
## AND/OR IN THE ALTERNATIVE ADEQUATE PROTECTION

Movant, **U.S. BANK, N.A. ITS SUCCESSORS AND/OR ASSIGNS,** by and through its undersigned attorney shows the Court:

1. Movant is a secured creditor of the above styled Debtor(s) and brings this Motion pursuant to the provisions of Section 362(d) of the Bankruptcy Code.

2. The Debtor(s) owns certain real property in VOLUSIA County, FLORIDA described as:

    **LOT 25, OCEAN BREEZE CIRCLE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN MAP BOOK 19, PAGE 89, PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.
    A/K/A: 21 OCEAN BREEZE CIR, ORMOND BEACH, FL 32176**

3. Debtor(s) owns the above real property subject to a promissory note and mortgage securing same dated April 23, 1997, which note and mortgage are held by Movant. Copies of the note and mortgage to Movant are attached hereto.

4. The Note and Mortgage are in default by reason of nonpayment of the installment due January 1, 2007 and all subsequent installment(s), therefore the interest of Movant is not being adequately protected.

5. Movant is entitled to adequate protection of its interest in the subject real property and would request the Court to required Debtor(s) to pay all post-petition payments directly to the Trustee pursuant to the provisions of that General Order relating to Chapter 13 Cases filed on or after October 17, 2005, Adm. Order-JAX-2005-6, dated October 24, 2005 in order to provide such adequate protection. The Debtor(s) plan indicates their intention to pay al pre-petition arrearages over the (60)-month life of the plan. Therefore, the post-petition mortgage payments should be paid directly to the Trustee pursuant to the provisions of that General Order relating to Chapter 13 Cases filed on or after October

17, 2005, Adm. Order-JAX-2005-6 dated October 24, 2005.

6. Movant seeks the award of $900.00 in bankruptcy fees and costs for the prosecution of this Motion.

7. The ten (10) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3) is waived so that **U.S. BANK, N.A. ITS SUCCESSORS AND/OR ASSIGNS,** can pursue its in rem remedies without further delay.

WHEREFORE, Movant, **U.S. BANK, N.A. ITS SUCCESSORS AND/OR ASSIGNS,** moves this Court to enter its order granting relief from stay or requiring Debtor(s) to provide adequate protection to Movant and that the ten (10) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) is waived so that **U.S. BANK, N.A. ITS SUCCESSORS AND/OR ASSIGNS,** can pursue its in rem remedies without further delay or requiring the Debtor(s) to provide adequate protection to the Movant and award bankruptcy fees and cost of $900.00 and granting such other relief as to the Court may seem just and proper.

I HEREBY CERTIFY that a true and correct copy of the Motion for Relief from Stay Or in the Alternative Adequate Protection and attachments In Support of Motion For Relief From Stay was delivered to the addressees on the attached mailing list by First Class U. S. Mail postage pre-paid **and/or electronic mail** this ___14___ day of ___September___, 2007.

> Law Offices of Marshall C. Watson, P.A.
> 1800 N.W. 49TH Street, Suite 120
> Fort Lauderdale, FL 33309
> Telephone: (954) 453-0365/1-800-441-2438
> Facsimile: (954) 689-3517
>
> By: _____
> John A. Watson, Esq.
> Bar Number: 340197

**Mailing List:**

MAMIE L. DAVIS, TRUSTEE
PO BOX 4308
JACKSONVILLE, FL 32201

SUZANNE RACHON
21 OCEAN BREEZE CIR
ORMOND BEACH, FL 32176

ROBERT ZIPPERER, ESQ.
224 S BEACH ST. STE. 202
DAYTONA BEACH, FL 32114

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
CASE NUMBER 07-03140 GLP
CHAPTER 13

IN RE:

SUZANNE RACHON

AFFIDAVIT IN SUPPORT OF MOTION
FOR RELIEF FROM STAY

Debtor(s)
_____/

STATE OF ARIZONA
COUNTY OF MARICOPA

BEFORE ME, the undersigned authority, personally appeared Olivia Todd, who, being first duly sworn, deposes and says:

1. Affiant is President of NDSC, authorized servicing agent for Movant, **U. S. BANK N.A, It's Successors and/or Assigns**, in the above styled bankruptcy and is personally familiar with the subject loan. The information hereinafter given is contained in the original books and records maintained in the office of said servicing agent. Affiant has personal knowledge of the books and records and how they are maintained as they relate to the mortgage loan owned by Movant. These books and records include data compilations of the payments made and received on the mortgage loan in question and are kept in the course of a regularly conducted business activity. The entries are made at or near the time that each payment is received, by persons with knowledge of the information being recorded. It is the regular practice of Movant to make these entries at the time the payments are received.

2. The allegations of the Motion for Relief from Stay filed in this case are true and correct.

3. There is now due and owing to the Movant upon the note and mortgage the following amounts:

    a. Principal balance as of 9/7/07      $51,519.70
    b. Accrued interest (per diem:$    )      $2680.02
    c. Outstanding Late Charges      $61.68
    d. Non Escrow Advances      $683.48
    e. Other Fees      $210.00
    f. Escrow Advances      $1910.03
    g. Credit      $96.10 (-)
h. Pro Rata MIP/PMI      $19.88
Collection Costs:

| | |
|---|---|
| Bankruptcy filing fee | $150.00 |
| Motion for Relief from Stay | $750.00 |
| TOTAL | $57,888.69 |

4. That Movant has not received the debtors post-petition regular monthly payments. The debtors are in default in their regular monthly post-petition payments for the months of August 1, 2007 through September 1, 2007. Monthly payments due at $657.99 each.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Affiant

Sworn to and subscribed before me this
7th day of August, 2007.

_____
NOTARY PUBLIC, State of Maricopa



Elissa R. Garcia
Notary Public-Arizona
MARICOPA COUNTY
My Commission Expires
AUGUST 28, 2008

Commissioned Name of Notary Public

Personally known  X  or produced identification

Type of Identification Produced _____

07-15965
9900735751

9900735751
_Rackon

This is to certify that this is a true and
exact copy of the original.

# NOTE

April 23, 1997      S. DAYTONA      FLORIDA
[Date]      [City]      [State]

Independence Mortgage Corporation of America

21 OCEAN BREEZE CIRCLE, ORMOND BEACH, FLORIDA 32176
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 62,750.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
INDEPENDENCE MORTGAGE CORPORATION OF AMERICA
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.850 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the 1ST day of each month beginning on June 1, 1997.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on May 1, 2027, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at
    2699 LEE ROAD, SUITE 600, WINTER PARK, FL 32789

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 411.18

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

APP. #: 05-000140/349919

FLORIDA FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument      Form 3210 12/83

ITEM 5996L1 (9511)      (Page 1 of 3 pages)      GREATLAND
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

The state documentary tax due on this Note has been paid and the proper stamps have been affixed to the mortgage securing this indebtedness.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)     _____(Seal)
SUZANNE RACHON              -Borrower                                 -Borrower

_____(Seal)     _____(Seal)
                            -Borrower                                 -Borrower

_____(Seal)     _____(Seal)
                            -Borrower                                 -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE PAY TO THE ORDER OF
THE LEADER MORTGAGE COMPANY

BY: _____
STEVEN L. KNAPP, 1ST VICE PRESIDENT
INDEPENDENCE MORTGAGE CORPORATION OF AMERICA

Form 3210 12/83

GREATLAND
To Order Call: 1-800-530-9393 ☐ Fax 615-791-1131

ITEM 5996L3 (9511)                (Page 3 of 3 pages)


*This is to certify that this is a true and exact copy of the original.*
*Independence Mortgage Corporation of America*

# ASSIGNMENT OF MORTGAGE

Loan No. 05-000140/349919
RACHON, SUZNNE

KNOW ALL MEN BY THESE PRESENTS, THAT INDEPENDENCE MORTGAGE CORPORATION OF AMERICA
2699 LEE ROAD, STE 600, WINTER PARK, FL 32789
party of the first part, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, lawful money of the United States, to it in hand paid by
THE LEADER MORTGAGE COMPANY
1015 EUCLID AVENUE, CLEVELAND, OHIO 44115
, party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over, unto the said party of the second part, a certain indenture of mortgage recorded in: Official Records Book          Page No.        Public Records of
VOLUSIA                  County, Florida upon the following described piece or parcel of land, situate and being in
VOLUSIA                  County, State of Florida, to wit:

AS REFERRED TO IN SAID MORTGAGE


together with the note or obligation described in said mortgage, and the money due and to become due thereon.

TO HAVE AND TO HOLD, the same unto the said party of the second part, its successors and assigns forever.

IN WITNESS WHEREOF, the said party of the first part has caused these presents to be signed in its name by its
VICE PRESIDENT                         , this  23RD  day of    MAY        , 1997

(SEAL)

By: _____
Name: STEVEN L. KNAPP
Title: 1ST VICE PRESIDENT
Address: 2699 LEE ROAD, STE 600
         WINTER PARK, FL 32789

STATE OF FLORIDA    )
                    ) SS.
COUNTY OF  ORANGE   )
                        ACKNOWLEDGEMENT

The foregoing instrument was acknowledged before me this  23RD  day of   MAY    , 19 97 , by
STEVEN L. KNAPP, 1ST VICE PRESIDENT                                      , the above named
signatory, on behalf of the corporation. He/She is personally known to me or has produced (_____
DRIVERS LICENSE                   ) as identification and did (did not) take an oath.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this  23RD  day of   MAY

PREPARED BY: JUDITH LAPRAIRIE

Name: INDEPENDENCE MORTGAGE CORPORATION
OF AMERICA
Address: 2699 LEE RD. SUITE 600
WINTER PARK, FL 32789

Return to: INDEPENDENCE MORTGAGE CORPORATION
OF AMERICA
2699 LEE RD. SUITE 600
WINTER PARK, FL 32789

CERTIFIED TO BE A
TRUE AND CORRECT
COPY OF THE ORIGINAL
LMH

*This is to certify that this is a true and exact copy of the original. Independence Mortgage Corporation of America*

———————[Space Above This Line For Recording Data]———————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on April 23, 1997
The mortgagor is SUZANNE RACHON A SINGLE PERSON

("Borrower"). This Security Instrument is given to
INDEPENDENCE MORTGAGE CORPORATION OF AMERICA
which is organized and existing under the laws of FLORIDA , and whose address is
2699 LEE ROAD, SUITE 600
WINTER PARK, FLORIDA 32789

("Lender"). Borrower owes Lender the principal sum of
SIXTY TWO THOUSAND SEVEN HUNDRED FIFTY AND 00/100
Dollars (U.S. $ 62,750.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
May 1, 2027 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in VOLUSIA
County, Florida:

LOT 25, OCEAN BREEZE CIRCLE, ACCORDING TO THE PLAT THEREOF AS RECORDED
IN MAP BOOK 19, PAGE 89, PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

which has the address of 21 OCEAN BREEZE CIRCLE, ORMOND BEACH
[Street] [City]
Florida 32176 ("Property Address");
[Zip Code]

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac Uniform Instrument Form 3010 9/90
GREATLAND
ITEM 1615L1 (9607R) *(Page 1 of 6 pages)* To Order Call: 1-800-530-9393 □ Fax 616-791-1131
APP. #: 05-000140/349919

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and

for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

Form 3010 9/90
GREATLAND ■
ITEM 1616L5 (9607B)    To Order Call: 1-800-530-9393 □ Fax 616-791-1131

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify] TAX EXEMPT FINANCING RIDER | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_/s/ Suzanne Rachon_ (Seal)
SUZANNE RACHON   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Signed, sealed and delivered in the presence of:

_/s/ Cecelia Fuller_
CECELIA FULLER

_/s/ Alice M. Ponte_
ALICE M. PONTE

STATE OF FLORIDA
COUNTY OF VOLUSIA

The foregoing instrument was acknowledged before me this 23RD day of April 1997 by SUZANNE RACHON

who is personally known to me or who has produced FLORIDA DRIVERS LICENSE as identification.

My Commission expires:

(Seal)

CECELIA FULLER
Notary Public, State of Florida
Commission No. CC 553658
My commission Expires JUN 24, 2000
BONDED THRU ATLANTIC BONDING CO., INC.

_/s/ Cecelia Fuller_
Notary Public

Form 3010 9/90